United States District Court
Southern District of Texas
FILED

APR 1 3 2005

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CYNTHIA L. ESPINOSA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. B-04-052 |
| | § | |
| HARLINGEN CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT and | § | |
| LARRY B. BRUNT, | § | |
| Defendants. | § | |

---

**DEFENDANT HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT'S
MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING BRIEF**

---

WALSH, ANDERSON, BROWN,
SCHULZE & ALDRIDGE, P.C.
P.O. Box 2156
Austin, Texas 78768
Telephone: (512) 454-6864
Facsimile: (512) 467-9318


BRIDGET ROBINSON
State Bar No. 17086800
Southern Dist. Admission No. 16521


ATTORNEYS FOR DEFENDANT
HARLINGEN CONSOLIDATED
INDEPENDENT SCHOOL DISTRICT

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................. i

TABLE OF CITATIONS ............................................................... ii

I.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ..................... 1

II.   STATEMENT OF FACTS ......................................................... 2

III.  STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ...................... 11

IV.   SUMMARY OF THE ARGUMENT .................................................. 12

V.    ARGUMENT AND AUTHORITY ................................................... 13

      A.    STANDARD OF REVIEW ................................................. 13

      B.    THE SCHOOL DISTRICT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
            TITLE IX CAUSE OF ACTION BECAUSE ESPINOSA CANNOT ESTABLISH, AS
            REQUIRED FOR TITLE IX LIABILITY, EITHER "ACTUAL KNOWLEDGE" OR
            "DELIBERATE INDIFFERENCE" BY DEFENDANT HCISD ..................... 15

            (1)   PLAINTIFF CANNOT ESTABLISH THAT A SCHOOL DISTRICT
                  REPRESENTATIVE WITH THE AUTHORITY TO STOP THE HARASSMENT
                  HAD "ACTUAL KNOWLEDGE" OF THE HARASSMENT ................. 15

            (2)   PLAINTIFF CANNOT ESTABLISH THAT THE SCHOOL DISTRICT
                  RESPONDED WITH DELIBERATE INDIFFERENCE TO KNOWN ACTS OF
                  STUDENT SEXUAL HARASSMENT BY DEFENDANT BRUNT ........... 22

      C.    TO THE EXTENT THAT ESPINOSA ATTEMPTS TO RAISE THE PENDENT STATE
            COMMON LAW TORT OF ASSAULT AGAINST DEFENDANT BRUNT IN HIS
            OFFICIAL CAPACITY, THE SCHOOL DISTRICT IS IMMUNE FROM THE CAUSE OF
            ACTION ............................................................. 26

VI.   CONCLUSION ................................................................. 28

CERTIFICATE OF SERVICE ........................................................... 29

APPENDIX

      APPENDIX TABLE OF CONTENTS

TABLE OF CITATIONS

**Citations**            **Page**

*Anderson v. Liberty Lobby, Inc.,*
     477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Armstrong v. City of Dallas,*
     997 F.2d 62 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Barr v. Bernhard,*
     562 S.W.2d 844 (Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Celotex Corp. v. Catrett,*
     477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*City of Hempstead v. Kmeic,*
     902 S.W.2d 118 (Tex. App. — Houston [1st Dist.] 1995, no writ) . . . . . . . . . . . . . . . . 27

*Crandell v. New York College of Osteopathic Medicine,*
     87 F.Supp.2d 304 (S.D. N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Davis v. DeKalb County Sch. Dist.,*
     233 F.3d 1367 (11th Cir. 2000), *cert. denied*, 532 U.S. 1066 (2001) . . . . . . . . . . . . . . 18

*Doe v. Dallas Indep. Sch. Dist.,*
     153 F.3d 211 (5th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Doe v. Dallas Indep. Sch. Dist.,*
     220 F.3d 380 (5th Cir. 2000), *cert. denied*, 531 U.S. 1073 (2001) . . . . . . . . . . . . . . . . 23

*Fontenot v. Upjohn Co.,*
     780 F.2d 1190 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Forsyth v. Barr,*
     19 F.3d 1527 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994) . . . . . . . . . . . . . . . . . . . . . . 15

*Gebser v. Lago Vista Indep. Sch. Dist.,*
     524 U.S. 274 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Gonzalez v. Ysleta  Indep. Sch. Dist.,*
     996 F.2d 745 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24

**TABLE OF CITATIONS** (Con't)

**Citations**                                                                                          **Page**

*Hayut v. State University of New York,*
    352 F.3d 733 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22

*Hopkins v. Spring Indep. Sch. Dist.,*
    736 S.W.2d 617 (Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Jackson v. Birmingham Bd of Educ.,*
    544 U.S. ___ (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Kentucky v. Graham,*
    473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.,*
    835 S.W.2d 49 (Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Monell v. New York City Dep't of Social Services,*
    436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Petrone v. Cleveland State Univ.,*
    993 F.Supp. 1119 (N.D. Ohio 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Reese v. Anderson,*
    926 F.2d 494 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rosa H. v. San Elizario Indep. Sch. Dist.,*
    106 F.3d 648 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18,19,21

*Texas Dept. of Public Safety v. Petta,*
    44 S.W.3d 575 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Wilson v. Beaumont Indep. Sch. Dist.,*
    144 F.Supp.2d 690 (E.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24

*Winters v. Houston Chronicle Publishing Co.,*
    795 S.W.2d 723 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## TABLE OF CITATIONS (Con't)

**Statutes**                                                                                                   **Page**

UNITED STATES CODE
    20 U.S.C. §§ 1681-88 ..................................................... 1
    20 U.S.C. § 1681(a) ..................................................... 1,15

TEX. ADMIN. CODE
    25 Tex. Admin. Code § 313 ................................................ 3

TEX. OCC. CODE
    §§ 451.001, *et seq* ..................................................... 3
    § 451.001(3) ......................................................... 3,18

**Rules**

FED. R. CIV. P.
    56 ................................................................. 13
    56(a) ............................................................... 13

TEX. CIV. PRAC. & REM. CODE
    §§ 101.001, *et seq* .................................................... 27
    § 101.021(1) ......................................................... 27
    § 101.051 ........................................................... 27
    § 101.057 ........................................................... 28
    § 101.057(2) ......................................................... 28

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Harlingen Consolidated Independent School District (hereafter, the "School District," or "HCISD"), and in response to Plaintiff's First Amended Petition files this Motion for Summary Judgment With Supporting Brief. Plaintiff Cynthia L. Espinosa ("Espinosa" or "Plaintiff") has filed suit against HCISD alleging a single cause of action under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681-88.[1] HCISD is entitled to summary judgment and in support shows as follows:

## I.   STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

During the 1999-2000 and 2000-2001 school years, (1) Plaintiff Espinosa was an HCISD high school student and soccer player, and (2) Defendant Larry B. Brunt ("Brunt" or "Defendant Brunt")[2] was an Athletic Trainer employed by HCISD. Espinosa sues both the School District and Defendant Brunt for sexual harassment under Title IX, which affords a student a cause of action for employee-student sexual harassment. The Title IX liability of a school district for such harassment, however, is limited only to those situations where: (1) a school district representative with the authority to stop the harassment had actual knowledge of the harassment, and (2) the district responded with deliberate indifference. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277-78 (1998).

Plaintiff is unaware of Brunt subjecting any other students to alleged inappropriate conduct. Moreover, although Plaintiff alleges that Brunt began sexually harassing her shortly after they met

---

[1]   20 U.S.C. § 1681(a) provides, in relevant part, as follows: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...."

[2]   Defendant Brunt's last name in some documents is misspelled as "Blunt," rather than "Brunt" (*see, e.g.*, Defendant's Exhibit 2.B). In this Motion, HCISD will correct misspellings so that he is referred to as Defendant Brunt.

in December 1999, Plaintiff failed to tell her parents, her teachers, any HCISD administrators, or any adult about the alleged harassment until February 2001, during her junior year. When the alleged sexual harassment of Plaintiff by Defendant Brunt was reported to the School District on February 20, 2001, HCISD promptly (1) placed Brunt on administrative leave and barred him from coming onto school property, participating in school activities, and having any contact with students or staff, and (2) began a thorough investigation of Espinosa's allegations of sexual harassment by Brunt. Plaintiff admits that all harassment by Brunt ceased after that report of his conduct was made to the School District. Shortly thereafter, Brunt resigned from his employment with HCISD.

Plaintiff's First Amended Complaint ("Amended Compl.") is Espinosa's live pleading. In it, Plaintiff appears only to allege a violation of Title IX (Amended Compl., p. 1, initial ¶). With the Title IX claim, she seeks compensatory and exemplary damages, attorney's fees, and costs (Amended Compl., p. 6, concluding ¶). As established in this Motion, HCISD is entitled to summary judgment on the Title IX claim because Plaintiff cannot establish either "actual knowledge" or "deliberate indifference," as required. Although the pleading is unclear, to the extent that Plaintiff attempts to raise the pendent common law tort of "assault" against Defendant Brunt in his official capacity, any such official-capacity claim would be the equivalent of a suit against HCISD, which is immune from the tort under the Texas Tort Claims Act.

## II.    STATEMENT OF FACTS

Plaintiff Cynthia Espinosa was a student and member of the girls soccer team at Harlingen High School South ("Harlingen South") during the 1998-1999, 1999-2000, and 2000-2001 school years, *i.e.*, her freshman, sophomore, and junior years (Amended Pet., p. 2, ¶s VI, VII; Defendant's Exhibit ("D-X") 5, 14:1-3, 121:23-25, 122:1-3). Plaintiff was an avid soccer player participating on both her school team and on a city league team—the type of player who "goes 110 percent in every

game" (D-X 5, 39:1-7, 127:10).  During Plaintiff's freshman year after she passed out running laps at a soccer practice, Espinosa was taken to a physician and diagnosed with as having the eating disorders of anorexia and bulimia (D-X 5, 36:14-25, 37:1-25, 38:1-24).

Given Plaintiff's anorexic and bulimic condition, her participation on two soccer teams, her prior injuries she tended to re-injure, and her all-out-110%-effort style of soccer play, Espinosa frequently was hurt and suffered injuries during soccer practices and games (D-X 5, 57:20-24, 127:1-25, 128:1-17, 138:20-22; D-X 7, 39:1-18, 61:19-25, 62:1-22).  Whether she suffered from knee injuries, ankle injuries, sprains, bangs, bruises, or the usual traumas of contact soccer, as a result of her three-hour daily practices Plaintiff typically had to go to the training room to have her injuries looked at and treated two or three times a week (D-X 5, 68:19-24, 127:1-13, 128:1-17; D-X 7, 61:19-25).  When she was hurt at practice, Plaintiff would go to the training room for the needed treatment from the athletic trainer while the other girls continued to practice (D-X 5, 91:3-17, 128:25, 129:1-3).  Under Texas law, as well as HCISD's job description in effect at the time, an "athletic trainer" is a licensed professional whose responsibilities include "the practice of preventing, recognizing, assessing, managing, treating, disposing of, and reconditioning athletic injuries ...." TEX. OCC. CODE § 451.001(3).[3] (*See also* D-X 1.K, ¶ 1).

The School District hired Defendant Brunt as a licensed athletic trainer during the fall semester of the 1999-2000 school year (D-X 7, 21:2-6, 41:4-25, 42:1-17).  Under his contracts of employment for the 1999-2000 and 2000-2001 school years, HCISD required Brunt to "comply with, and be subject to, state and federal law and District policies, rules, regulations, and administrative directives...." (D-X 1.I, ¶ 4).  Plaintiff first met Brunt in December 1999 during preseason soccer of

---

[3]  The Texas Supreme Court recognizes athletic trainers to be among the licensed professionals of the State, like attorneys and physicians. *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 731-32 n.18 (Tex. 1990). Athletic trainers in Texas are subject to the stringent requirements of both state statute, TEX. OCC. CODE §§ 451.001, *et seq.*, and the state regulations of the Advisory Board of Athletic Trainers, 25 TEX. ADMIN. CODE § 313.

her sophomore year (D-X 5, 55:18-25, 56:1-8, 123:3-11). Thereafter Brunt became friends with Plaintiff's parents, and they even invited him to their annual Open House at their home on New Year's Eve during Plaintiff's junior year (D-X 5, 101:3-10, 105:15-20; D-X 7, 94:3-25, 95:1-16).

As an athletic trainer, Defendant Brunt worked with Plaintiff to both prevent and treat soccer injuries during the December to April soccer season of Plaintiff's sophomore year and during the first two months (December 2000 and January 2001) of her junior year soccer season (D-X 5, 147:24-25, 148:1-22; D-X 6, Resp. to Interrog. #24; D-X 7, 61:19-25, 62:1-22). Eventually, in February 2001, Espinosa informed first her mother and then HCISD officials that previously during the 1999-2000 and 2000-2001 school years Brunt had sexually harassed her by: (1) asking Plaintiff to help him take water bottles to a storage shed located behind HCISD tennis courts and (after lowering the shed door) kissing her on the neck and lips; (2) repeatedly telling Plaintiff that he loved her romantically; (3) telling Plaintiff that she needed to have an orgasm with him; (4) asking Plaintiff to accompany him on a week long Carribean cruise and to lie to her parents telling them she was with her sister in Austin; (5) telling Plaintiff that she could leave her parents and live with him when she turned 18; (6) kissing Plaintiff on the cheek; (7) inviting Plaintiff to accompany him into the locker room during a half time break at a game; and (8) inviting Plaintiff to go bicycle riding with him on the Island (D-X 2.B, pp. D-0035, D-0040-44; D-X 5, 161:16-25, 162:1-25, 163:1-21).

Plaintiff admits that she is not aware of any other student who was subjected to inappropriate conduct by Brunt (D-X 4, Supp. Resp. to Interrog. #20). Further, Plaintiff acknowledges that during their encounters when Brunt's alleged sexual misconduct occurred, it usually would occur in the training room when nobody else was there (D-X 5, 59:23-25, 67:1-25, 68:1-3, 71:2-22) or would be whispered to Plaintiff where no one else could hear (D-X 5, 60:9-24). If Espinosa was accompanied by someone into the training room or if someone came in when the two were alone, then Brunt would "start acting differently," his behavior would change, and he would not say inappropriate

things to Plaintiff (D-X 5, 73:12-17, 173:2-15). Thus, for example, Plaintiff acknowledges that no one ever saw Defendant Brunt kiss her (D-X 5, 60:2-4). Similarly, Plaintiff thus does not know that anyone else ever heard Brunt say he loved her or she was beautiful (D-X 5, 60:5-25, 61:1-2).

In carrying out his duties to treat athletic injuries, Brunt of course had to touch female athletes. For example, at one game a female soccer player (Nadia Costa-Luna) got head-butted, and as Brunt walked the injured girl off the field he tried to help stabilize her so she would not trip and fall (by putting one hand and his arm around her shoulder) and to take her pulse (with the other hand) (D-X 7, 114:18-25, 115:1-25, 116:1-20, 118:2-12). For example, at another soccer game, one attended by Plaintiff's parents, Plaintiff fell and injured her shoulder (D-X 5, 81:8-10, 107:22-24). Plaintiff alleges that in treating her injured shoulder at that game Brunt "real quick" put his hand on the top part of her breast below her shoulder on the outside of her clothing (D-X 5, 81:12-22). Plaintiff's parents who were at the game, however, did not see anything inappropriate by Brunt (D-X 5, 107:22-25, 108:1-4). Moreover, the School District did not receive any reports of inappropriate touching or sexually harassing conduct by Brunt, until after the allegations involving Plaintiff first were raised and reported to HCISD in February 2001 (D-X 1, ¶ 3, D-X 2, ¶ 3).

While employed by the School District, Defendant Brunt was aware that HCISD prohibited and did not condone any type of sexual harassment, inappropriate contact, offensive language, and/or romantic relationships by employees with students (D-X 7, 162:3-16, 164:10-14). HCISD made all of its policies available on each campus and invited staff to review them, Brunt did review the HCISD policy manual at Harlingen South, and the School District updated faculty and staff about HCISD policies at monthly faculty meetings attended by Brunt (D-X 7, 82:6-25, 83:1-25). At all times during the events in question in this case, HCISD had in force various policies prohibiting employee-student sexual harassment and providing the procedures for reporting and investigating

any such harassment (D-X 1, ¶ 5). Like Brunt, Plaintiff also was aware that HCISD had sexual harassment policies in effect (D-X 5, 103:2-8). The Harlingen South student handbook defined prohibited sexual harassment and explained both the HCISD sexual harassment policies and the procedures for students to report harassment by an HCISD employee (D-X 1.G, pp. D-0201, D-0218, D-0221, D-0233, D-0113, D-0128, D-0131, D-0145). Both Plaintiff and her mother signed an acknowledgment that they had received the 2000-2001 student handbook (D-X 1.H; D-X 5, 84:17-25, 85:1-25, 86:1-15).

Those HCISD sexual harassment policies (together with their companion exhibits) addressed student rights, reporting procedures, and employee standards of conduct. They included School District Policies FNCJ (LEGAL) and FNCJ (LOCAL), entitled "Student Rights and Responsibilities: Sexual Harassment/Sexual Abuse" (D-X 1.A, p. D-0001; D-X 1.B, pp. D-0002-03). Policy FNCJ (LEGAL) referenced Title IX, defined sexual harassment, and prohibited sexual harassment of a student by an employee (D-X 1.A, p. D-0001, ¶s 3-4). Policy FNCJ (LOCAL) set out the procedures (1) for students, parents, and employees to report sexual harassment, (2) for HCISD to investigate such reports, and (3) for the student or parent to appeal if the resolution of the reported harassment at the campus level was not satisfactory (D-X 1.B, pp. D-0002-03). Further, School District FNCJ (EXHIBIT), entitled "Notice of Parent and Student Rights," (1) set out in plain language HCISD's policy prohibiting employee-student sexual harassment, (2) defined sexual harassment, (3) provided addresses and phone numbers to report such harassment, and (4) outlined the steps for parents and students to take if not satisfied with HCISD's resolution of such a report (D-X 1.C, pp. D-0004-05).

School District Policy DHC (LEGAL) and Policy DHC (LOCAL), entitled "Employee Standards of Conduct: Sexual Harassment/Sexual Abuse," also (1) defined and prohibited employee-student sexual harassment, (2) prohibited romantic relationships between employees and students,

-6-

and (3) provided procedures for reporting and investigating such harassment (D-X 1.D & 1.E, pp. D-00022-23, D-0026-27).  Similarly, School District DHC (EXHIBIT), entitled "Notice of Employee Rights," yet again set out HCISD's policy prohibiting sexual harassment of a student by an employee and defined sexual harassment (D-X 1.F, pp. D-00024-25).

Despite having received the student handbook containing the policies and procedures for reporting sexual harassment by a School District employee, Plaintiff did not report any allegations of inappropriate contact or harassment by Brunt to any adult during the 1999-2000 school year or during the first half of the 2000-2001 school year (D-X 1.H; D-X 3, Admission Nos. 3, 4 & 5).  After the individual incidents of Brunt's misconduct occurred, Plaintiff never reported them to (1) the soccer coach, (2) the adults who picked her up from soccer practice, or (3) anybody at Harlingen South (D-X 5, 67:23-24, 69:3-17).

On or about February 5, 2001, Plaintiff first reported allegations of inappropriate contact or conduct by Defendant Brunt to her mother (D-X 2.B, p. D-0037, ¶ 2; D-X 3, Admission No. 2).  When her deposition was taken, Plaintiff testified as follows:

> Q.    When did you first tell your mother that Mr. Brunt had sexually harassed you or been inappropriate in any way?
> A.    It was in my junior year.
>
> Q.    Had you told anyone before you told your mother?
> A.    No she was the first person I told.

(D-X 5, 86:24-25, 87:1-5).  Plaintiff wanted her mother to keep the information a secret, but the mother later told Plaintiff's therapist (Mrs. Ocanas) about the allegations  (D-X 2.B, p. D-0037, ¶ 2, p. D0038, ¶ 4; D-X 3, Admissions Nos. 6 & 26).

Until Plaintiff first revealed the allegations of sexual harassment to her mother and then to the School District in February 2001, the adults around Plaintiff (including HCISD administrators) lacked actual knowledge of any sexual harassment by Defendant Brunt.  Before February 20, 2001,

no parent, student, employee, or citizen ever had reported to HCISD any sexually harassing conduct or behavior by Brunt (D-X 1, ¶ 3; D-X 2, ¶ 3). No employees reported suspected sexual harassment by Brunt, although under HCISD policy an employee who suspects that a student is being sexually harassed by another employee is required to "inform his or her principal, immediate supervisor, or the Title IX coordinator" (D-X 1, ¶ 8; D-X 1.B, p. D-0002, ¶ 5; D-X 1.E, p. D-0023, ¶ 6). Plaintiff's parents did not have actual knowledge of any harassment until February 5, 2001, even though they frequently attended their daughter's soccer games (D-X 2.B, p. D-0037, ¶ 2, p. D-0040, ¶ 2; D-X 8 34:23-24). Plaintiff's parents personally knew the HCISD administrator who supervised the HCISD trainers and coaches, yet the parents raised no concerns or complaints with him about Brunt's conduct and he never received any complaints about Brunt (D-X 10 6:9-18, 39:15-25, 40:1-15, 41:8-10). Plaintiff's soccer coach at Harlingen South never saw any inappropriate conduct by Brunt toward Plaintiff, and Plaintiff never informed the coach of any inappropriate conduct by Brunt (D-X 8 34:2-7, 40:11-25, 41:1-2). The athletic coordinator of Harlingen South who attended most of the school's soccer games saw Brunt treat injured female athletes, but never saw Brunt touch any of them inappropriately or otherwise engage in any inappropriate conduct (D-X 9 14:20-25, 15: 16-25, 16:1-2, 33:14-21). The other athletic trainer (Heather Bouler) at Harlingen South had no knowledge of any inappropriate behavior or comments from a male in her department toward any students, even though the female soccer players usually would confide in her when they had problems (D-X 2.B, p. D-0052, ¶s 2-3). Prior to February 5, 2001, Plaintiff did not report any allegations of inappropriate contact or conduct by Brunt to any adult (D-X 3, Admission No. 3).

On February 20, 2001, HCISD received its first notice of allegations of sexual misconduct by Defendant Brunt, when on that date (1) Plaintiff's therapist reported Espinosa's allegations of the misconduct by Brunt to the School District, and (2) Plaintiff's mother went to the high school, where

in a conference with HCISD administrators she too reported her daughter's allegations of the misconduct by Brunt (D-X 1, ¶ 8; D-X 2, ¶ 4; D-X 2.A, ¶s 1-3; D-X 3, Admission No. 10).

Alfredo Sosa was one of the HCISD administrators who met with Plaintiff's mother on February 20, 2001, *i.e.*, the first day that Plaintiff's allegations of the misconduct by Defendant Brunt were reported to the School District (D-X 2.A, ¶ 1). At the time, Mr. Sosa was an Assistant Principal at Harlingen South and was the campus Title IX investigator (D-X 2, ¶ 2). Mr. Sosa considered the allegations of sexual harassment to be quite serious (D-X 2, ¶ 4). That same day he initiated his Title IX investigation, he documented in writing the allegations raised by Plaintiff's mother and Plaintiff's therapist, and he informed Dr. Christina Garcia in the HCISD Human Resources Department of the allegations against Brunt (D-X 2, ¶ 4; D-X 2.A; D-X 2.B, p. D-0037, ¶ 1).

After Plaintiff's allegations concerning the inappropriate conduct by Defendant Brunt were reported to the School District on February 20, 2001, Plaintiff no longer had any contact with Brunt at school (D-X 3, Admission No. 29). As she testified, "after it all came out into the open, I didn't even see him. I just -- I don't know what happened to him." (D-X 5, 147:21-23).

The next day, *i.e.*, February 21, 2001, Dr. Garcia (HCISD's Assistant Superintendent for Human Resources) met with Defendant Brunt and informed him that he was being placed on "administrative leave with pay pending an investigation of alleged inappropriate conduct toward a female student" (D-X 2.B, p. D-0039, ¶ 1; D-X 7, 26:5-25, 27:1-23). In a written memorandum, Dr. Garcia also gave Brunt the following directive:

> Until further notice, you are to remain off duty, refrain from coming on school property, and have no further contact with Harlingen CISD personnel or students. You are not to go on school property or participate in any district activity, without specific permission from the Superintendent or this office.

(D-X 2.B, p. D-0039, ¶ 2). That same day, Brunt signed an acknowledgment that he had received the memorandum containing the directive (D-X 2.B, p. D-0039, ¶ 3). That was Brunt's last day at the

Harlingen South campus (D-X 7, 27:17-18).

Mr. Sosa's investigation of Plaintiff's allegations of sexual harassment by Defendant Brunt was thorough and continued from February 20, 2001 (when the allegations first were reported to HCISD) to March 30, 2001 (when Sosa's completed Investigative Report was signed by him) (D-X 2, ¶ 6;D-X 2.A, ¶s 1-5; D-X 2.B, pp. D-0035-36). In conducting the investigation of Plaintiff's allegations against Brunt, Mr. Sosa spoke to the people whose names were brought to his attention during his interviews with Plaintiff and others, documented the interviews in writing, and obtained signed statements following the interviews from all who were available (D-X 2, ¶ 6; D-X 2.B, p. D-0061, ¶ 1). During his investigation of Plaintiff's allegations, Mr. Sosa (1) interviewed Plaintiff and obtained her signed statement regarding her allegations of sexual harassment by Defendant Brunt (D-X 2.B, pp. D-0040-44; D-X 5, 54:11-20, 55:2-9); (2) interviewed Defendant Brunt (and documented the interview in writing) concerning Brunt's contact with and conduct around Plaintiff, the allegations that had been raised against him and Brunt's denials of all allegations and all charges of harassment, Brunt's background, and how he performed his job duties as an athletic trainer (D-X 2.B, pp. D-0055-60); (3) twice interviewed and obtained signed statements from Plaintiff's mother regarding Plaintiff's allegations and Defendant Brunt's conduct (D-X 2.B, pp. D-0037-38, 0045-46); (4) interviewed and reduced to writing statements from Plaintiff's father about Plaintiff's allegations and Defendant Brunt's conduct (D-X 2.B, pp. D-0045-46); (5) provided Plaintiff's parents with copies of HCISD Policies FNCJ (LEGAL) and FNCJ (LOCAL), entitled "Student Rights and Responsibilities: Sexual Harassment/Sexual Abuse," as well as a copy of FNCJ (EXHIBIT), "Notice of Parent and Student Rights" (D-X 1.A, 1.B, and 1.C; D-X 2.B, p. D-0047); (6) interviewed and obtained a signed statement from the student manager of the girl's soccer team about Defendant Brunt's conduct (D-X 2.B, pp. D-0048-49); (7) interviewed and obtained a signed statement from a

Security Guard stationed at Harlingen High School South about Defendant Brunt's conduct (D-X 2.B, pp. D-0050-51); and (8) interviewed and obtained a signed statement from the other Athletic Trainer at Harlingen South about Defendant Brunt's conduct (D-X 2.B, pp. D-0052-54). Mr. Sosa continued his investigation even after Brunt resigned from HCISD (D-X 2.B; D-X 1.J).

On March 1, 2001, Brunt resigned from his employment with HCISD (D-X 1.J). Despite the resignation, Mr. Sosa completed his investigation and, on March 30, 2001, signed his Investigative Report concerning Plaintiff's allegations of sexual harassment (D-X 2.B, pp. D-0035-36). Mr. Sosa's Report noted that the investigation results were "inconclusive" because (1) Brunt "denied the truth of all allegations made against him by the complainant," and (2) "there are no witnesses available or any other person who could verify that these allegations took place" (D-X 2.B, p. D-0036, ¶s 2-3). By letter also dated March 30, 2001, Mr. Sosa informed Plaintiff's parents that the investigation had been concluded and that appropriate action had been taken (D-X 2.B, p. D-0061, ¶s 3-4).

Plaintiff's parents had been given copies in February 2001 of the HCISD policies entitled "Student Rights and Responsibilities: Sexual Harassment/Sexual Abuse," as well as the HCISD exhibit entitled "Notice of Parent and Student Rights" (D-X 1.A, 1.B, and 1.C; D-X 2.B, p. D-0047). Although they thus were informed in February of their rights under HCISD policies if they were not satisfied with the outcome of the sexual harassment investigation, after Mr. Sosa informed them of the conclusion of the investigation in March, they sought no further review pursuant to those policies (D-X 1, ¶ 10; D-X 2, ¶ 8). Instead, on August 21, 2003, Plaintiff filed suit in state court, which suit eventually was removed to federal court. Plaintiff's First Amended Petition is Espinosa's live pleading. In that Petition, Plaintiff only alleges a violation of Title IX (Amended Compl., p. 1, initial ¶).

**III.   STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT**

Whether HCISD is entitled to summery judgment because:

A.      Plaintiff cannot establish a Title IX violation because she cannot show (1) that a School District representative with the authority to stop Defendant Brunt's alleged sexual harassment had actual knowledge of the harassment, and/or (2) deliberate indifference by the School District.

B.      Plaintiff cannot establish liability the School District for the pendent state tort of assault (by suing Defendant Brunt in his official capacity), because HCISD is immune from the claim under the Texas Tort Claims Act.

## IV.    SUMMARY OF THE ARGUMENT

The case at bar involves a high school student suing the School District under Title IX, based upon allegations of sexual harassment by an HCISD athletic trainer. As the Supreme Court has stated, "[w]e will not hold a school district liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference." *Gebser*, 524 U.S. at 292. In this case the School District is entitled to summary judgment on Plaintiff's Title IX cause of action because Espinosa can establish neither "actual notice" nor "deliberate indifference," as required.

First, summary judgment is mandated because Plaintiff cannot create a genuine issue of material fact establishing the "actual notice" or "actual knowledge" required for Title IX liability to attach to HCISD. Requiring actual (rather than constructive) knowledge imposes a significant evidentiary burden on a Title IX claimant. Plaintiff does not contend that Defendant Brunt sexually harassed any other students. Plaintiff cannot identify any specific HCISD official with actual knowledge of Brunt's harassment of her, who had authority to address the alleged harassment and to institute corrective measures on HCISD's behalf. Contrary to Plaintiff's allegations, the evidence establishes that the adults around Plaintiff, including HCISD administrators, lacked actual knowledge of alleged sexual harassment by Brunt until the allegations first were revealed to Plaintiff's mother and then to the School District in February 2001, at which point all harassment ceased.

Second, summary judgment is mandated because Plaintiff cannot create a genuine issue of material fact establishing "deliberate indifference" as required for Title IX liability to attach to

-12-

HCISD. When the School District received notice of Plaintiff's allegations of sexual harassment by Brunt in February 2001, HCISD did not turn a blind eye to the allegations. Instead, it (1) suspended Brunt, (2) directed Brunt not to come onto school property or to have any contact with students or staff, (3) conducted a thorough investigation of Plaintiff's allegations, (4) provided Plaintiff's parents with copies of the relevant HCISD policies, (5) accepted Brunt's resignation, and (6) informed Plaintiff's parents of the completion of the investigation. HCISD was not deliberately indifferent. As a result, Title IX liability is precluded, and the School District is entitled to summary judgment.

Further, although Plaintiff's pleading is unclear, to the extent that Espinosa attempts to raise the pendent common law tort of "assault" against Defendant Brunt in his official capacity, any such official-capacity claim would be the equivalent of a suit against HCISD, which is immune from the tort under the Texas Tort Claims Act. Under the Act, the school districts of the State retain governmental immunity (1) for all tort claims except those arising from an employee's negligent operation or use of a motor vehicle, and (2) for assault, battery, and other intentional torts. As a result, HCISD's liability for the tort is precluded, and the School District is entitled to summary judgment for any pendent tort claim against Brunt in his official capacity.

## V.   ARGUMENT AND AUTHORITY

### A.   STANDARD OF REVIEW

Defendant moves for summary judgment pursuant to FED. R. CIV. P. 56. In deciding the motion, the court's function is to determine whether there is a genuine issue of material fact for trial and "whether reasonable jurors could find from a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment is proper when the pleadings, depositions, or other discovery show there is no genuine issue of material fact. FED.R.CIV.P. 56(a). The moving party bears the initial burden of

demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, this burden does not require the movant to present evidence negating the opponent's claim. *Id.* The movant may be entitled to judgment by showing that the record contains no evidence that the other side will be able to prove an essential element of its case. *Id.* at 323-24. When a defendant has shown no genuine issue of material fact, "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. The plaintiff "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. The non-movant "cannot discharge his burden by alleging legal conclusions," *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195-96 (5th Cir. 1986), or by resting on the allegations in his pleadings. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).

While the court must view the evidence and inferences in the light most favorable to the non-movant, summary judgment should be granted when "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant, or where it is so overwhelming that it mandates judgment in favor of the movant." *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993). "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). There are no genuine issues of material fact in the case at bar, and the School District is entitled to summary judgment as a matter of law on Espinosa's Title IX claim.

**B.**   **THE SCHOOL DISTRICT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE IX CAUSE OF ACTION BECAUSE ESPINOSA CANNOT ESTABLISH, AS REQUIRED FOR TITLE IX LIABILITY, EITHER "ACTUAL KNOWLEDGE" OR "DELIBERATE INDIFFERENCE" BY DEFENDANT HCISD**

Title IX provides in part that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable through an implied private right of action for damages. *Gebser*, 524 U.S. at 280-81. Although a private remedy is available against a school district, the Supreme Court has made clear the limited instances in which Title IX liability may be imposed on the district based upon an employee's sexual harassment of a student. "<u>We will not hold a school district liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference.</u>" *Id.* at 292 (emphasis added). In the case at bar, summary judgment is mandated because Plaintiff can establish neither "actual notice" nor "deliberate indifference," as required.

**(1)**   **PLAINTIFF CANNOT ESTABLISH THAT A SCHOOL DISTRICT REPRESENTATIVE WITH THE AUTHORITY TO STOP THE HARASSMENT HAD "ACTUAL KNOWLEDGE" OF THE HARASSMENT**

The School District is entitled to summary judgment because Plaintiff cannot establish "actual notice" or "actual knowledge" as required for Title IX liability to attach. *Id.*

> [W]e hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [school district's] behalf has actual knowledge of discrimination in the [district's] programs and fails adequately to respond.

*Id.* 524 U.S. at 290.

As the non-movant, Plaintiff must "identify specific evidence in the record and articulate the 'precise manner' in which the evidence support[s] [her] claim." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). Plaintiff cannot do so and cannot establish that prior to

-15-

February 20, 2001, any HCISD official (who at a minimum had authority to address the alleged harassment by Defendant Brunt and to institute corrective measures on the School District's behalf) had "actual notice" or "actual knowledge" of sexual harassment by Brunt.  To the contrary, Plaintiff herself acknowledges that (1) she is not aware of any other student who was subjected to inappropriate conduct by Brunt, (2) prior to February 5, 2001, she had not reported any allegations of any inappropriate conduct by Brunt to any adult, and (3) after her allegations concerning Brunt's inappropriate conduct were reported to HCISD on February 20, 2001, she no longer had any contact with Brunt and was not subjected to any further harassment (D-X 3, Admissions #s 2, 3, 29; D-X 4, Supp. Answer to Interrog. # 20; D-X 5, 86:24-25, 87:1-5).  HCISD is entitled to summary judgment.

The *Gebser* opinion is instructive as to when actual knowledge will <u>not</u> be found to exist. In *Gebser*, the Court held that a school administrator's knowledge of inappropriate comments by a teacher in class did not provide the requisite "actual notice" that the teacher was engaged in a sexual relationship with a student, as required to impose Title IX liability on the district.  *Gebser*, 524 U.S. at 291-92.  The Supreme Court observed:

> Applying the framework to this case is fairly straightforward, as petitioners do not contend they can prevail under an actual notice standard. The only official alleged to have had information about [the teacher's] misconduct is the high school principal. That information, however, consisted of a complaint from parents of other students charging only that [the teacher] had made inappropriate comments during class, which was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student. Lago Vista, moreover, terminated [the teacher's] employment upon learning of his relationship with Gebser.

*Id.* at 291.

To establish that an official with the requisite authority had "actual notice" or "actual knowledge," a student "need not show that the district knew that a particular teacher would abuse a particular student . . . [b]ut Title IX liability for sexual harassment will not lie if a student fails to demonstrate that the school district actually knew that the students faced a substantial threat of

-16-

sexual harassment." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 659 (5th Cir. 1997). Title IX liability may not be imposed upon a school district when the official with the requisite authority either: (1) "did not know of the underlying facts indicating a sufficiently substantial danger;" or (2) "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* In other words, for "actual notice" to be proved by Plaintiff and for Title IX liability to attach, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 658 (emphasis added). The School District is not asserting that in order to provide the required "actual notice" Plaintiff necessarily had to follow the HCISD policies for reporting sexual harassment which were provided to her in the student handbook. "[U]nder *Gebser* and its progeny, an aggrieved student or employee need not follow the institution's official route for reporting sexual harassment. She merely must report to someone with authority to take corrective measures." *Crandell v. New York College of Osteopathic Medicine*, 87 F.Supp.2d 304, 321 (S.D. N.Y. 2000).

In the case at bar, Plaintiff must establish that specific HCISD officials had the requisite actual notice of Brunt's sexual harassment based solely upon his actions toward Plaintiff, herself, because Plaintiff is unaware of any other students who were allegedly subjected to inappropriate conduct by Brunt (D-X 4, Supp. Answer to Interrog. No. 20). However, Plaintiff does not attempt to identify any particular HCISD official(s) with authority to end the harassment who allegedly had the requisite "actual notice" or "actual knowledge" of Brunt's harassment of her. Instead, Plaintiff contends that unidentified "HCISD employees and Trustees attended soccer games during which Mr. Brunt's behavior was obvious." (D-X 3, Answer to Interrog. No. 17).

In essence, Plaintiff's theory of liability appears to be that because there was physical contact and touching by Brunt of female athletes at soccer games and practices, then the School District

should have known that he was sexually harassing female students. The "should have known" standard of notice or knowledge, however, is the standard used to establish "constructive knowledge" (rather than "actual knowledge") which the courts expressly have held is <u>insufficient</u> in a Title IX intentional discrimination case. *Rosa H.*, 106 F.3d at 656.

An athletic trainer, like Defendant Brunt, is going to have significant amounts of physical contact with students in order to accomplish his job responsibilities of both preventing and treating their athletic injuries (D-X 1.K, ¶ 1). *See also,* TEX. OCC. CODE § 451.001(3). However, touching and physical contact in the context of student athletics does not equate to notice of sexual harassment. For example, a student's complaint to a principal about a teacher's touching during a football game (in which she played center and the physical education teacher played quarterback) was insufficient to alert the school district to the possibility that teacher was sexually harassing the student, and thus liability of the school district under Title IX was precluded. *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1373 (11th Cir. 2000), *cert. denied*, 532 U.S. 1066 (2001). In the case at bar, given Plaintiff's anorexic and bulimic condition, her participation on two soccer teams, her prior injuries she tended to re-injure, and her all-out-110%-effort style of soccer play, Espinosa frequently was hurt and suffered injuries during soccer practices and games (D-X 5, 57:20-24, 127:1-25, 128:1-17, 138:20-22; D-X 7, 39:1-18, 61:19-25, 62:1-22). Whether she suffered from knee injuries, ankle injuries, sprains, bangs, bruises, or the usual traumas of contact soccer, as a result of her three-hour daily practices Plaintiff typically had to have her injuries looked at and treated two or three times a week (D-X 5, 68:19-24, 127:1-13, 128:1-17; D-X 7, 61:19-25). In carrying out his duties to treat athletic injuries, Brunt had to touch female athletes. For example, at one game when a female soccer player got head-butted, as Brunt walked the injured girl off the field he tried to help stabilize her so she would not trip and fall (by putting one hand and his arm around her shoulder) while at the same time

-18-

taking her pulse (with the other hand) (D-X 7, 114:18-25, 115:1-25, 116:1-20, 118:2-12). For example, at another soccer game, one attended by Plaintiff's parents, Plaintiff fell and injured her shoulder (D-X 5, 81:8-10, 107:22-24).  Plaintiff alleges that in treating her injured shoulder at that game Brunt "real quick" put his hand on the top part of her breast below her shoulder on the outside of her clothing (D-X 5, 81:12-22).  Plaintiff's parents who were at the game, however, did not see anything inappropriate by Brunt (D-X 5, 107:22-25, 108:1-4).

In *Gebser*, the fact that the school principal knew "that [the teacher] had made inappropriate comments during class, ... was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student." *Gebser*, 524 U.S. at 291.  Similarly in the case *sub judice*, whether unidentified employees or trustees of HCISD knew that there was touching and physical contact with Plaintiff and other female soccer players by Brunt during the performance of his duties as an athletic trainer (which contact was not reported as either sexual or inappropriate before Brunt was placed on leave) does not establish "that the school district actually knew that the students faced a substantial threat of sexual harassment." *Rosa H.*, 106 F.3d at 659. Plaintiff has obtained two affidavits from parents of female soccer players (D-X 3, Plaintiff's Response to Request for Production No. 20, attaching affidavits from Gramley and Luna).  However, those affidavits do not purport to claim that the parents reported any suspicions of sexual harassment to any HCISD officials or that the parents gave "actual notice" to the School District of any misconduct by Brunt.  Instead, the parents' affidavits claim that when performing his duties as an Athletic Trainer and tending to student injuries during soccer games, Defendant Brunt (1) was "too touchy with the girls," (2) would "touch the female players after the player's injury was treated," (3) "was always putting his arm around them," and (4) after one female player suffered a concussion during a game, "had his arm around [the student]" as he escorted her off the field and then started

"rubbing [the girl's] back" (D-X 3, Plaintiff's Response to Request for Production No. 20, Gramley Affidavit ¶ 3 & Luna Affidavit ¶ 3). Although one of the parent affidavits asserts that the parent complained to the School District <u>after</u> Plaintiff's parents already had reported their daughter's allegations of Brunt's misconduct, any such report thus was made (1) after Brunt already was placed on leave and directed to have no further contact with students, and (2) after all alleged harassment of Plaintiff had ceased (D-X 2.B, p. D-0039,¶s 1 & 2; D-X 3, Admission No. 29).

Not only does Plaintiff lack evidence to establish "actual notice" as required, but the School District's summary judgment evidence shows that HCISD had no such actual knowledge. The adults around Plaintiff, including her parents and HCISD administrators, lacked actual knowledge of alleged sexual harassment by Brunt until the allegations first were revealed to Plaintiff's mother and then to the School District in February 2001. Before February 20, 2001, no parent, student, employee, or citizen ever had reported to HCISD any sexually harassing conduct or behavior by Defendant Brunt (D-X 1, ¶ 3; D-X 2, ¶ 3). No employees reported suspected sexual harassment by Brunt, although HCISD policy required an employee "inform his or her principal, immediate supervisor, or the Title IX coordinator" of any student sexual harassment (D-X 1, ¶ 8; D-X 1.B, p. D-0002, ¶ 5; D-X 1.E, p. D-0023, ¶ 6). Plaintiff's parents did not have actual knowledge of the harassment until February 5, 2001 (D-X 2.B, p. D-0037, ¶ 2, p. D-0040, ¶ 2). Plaintiff's parents personally knew the HCISD administrator who supervised HCISD trainers and coaches, yet the parents raised no concerns or complaints with him about Brunt's conduct and he never received any complaints about Brunt (D-X 10 6:9-18, 39:15-25, 40:1-15, 41:8-10). Plaintiff's soccer coach at Harlingen South never saw any inappropriate conduct by Defendant Brunt toward Plaintiff, and Plaintiff never informed him of any inappropriate conduct by Brunt (D-X 8 34:2-7, 40:11-25, 41:1-2). The athletic coordinator of Harlingen South who attended most of the school's soccer games saw

Brunt treat injured female athletes, but never saw Brunt touch any of them inappropriately or otherwise engage in any inappropriate conduct (D-X 9 14:20-25, 15: 16-25, 16:1-2, 33:14-21). The other athletic trainer (Heather Bouler) at Harlingen South had no knowledge of any inappropriate behavior or comments from a male in her department toward any students, even though the female soccer players usually would confide in her when they had problems (D-X 2.B, p. D-0052, ¶s 2-3). Prior to February 5, 2001, Plaintiff did not report any allegations of inappropriate contact or conduct by Defendant Brunt to any adult (D-X 3, Admission No. 3). HCISD was not aware of alleged sexual harassment by Brunt until after Plaintiff's allegations were reported to the School District on February 20, 2001, at which time Plaintiff had no further contact with him and all harassment ceased (D-X 3, Admission No. 29).

In short, the School District is entitled to summary judgment because Plaintiff cannot create a genuine issue of material fact establishing the "actual notice" or "actual knowledge" required for Title IX liability to attach to HCISD. For "actual notice" to be proved by Plaintiff, she must (but cannot) identify a specific HCISD official with the authority to address the harassment and take corrective measures who (1) was "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) "also dr[e]w the inference." *Rosa H.*, 106 F.3d at 658. Moreover, the School District has established as a matter of law that Title IX liability will not attach because no HCISD official who had authority to address the alleged harassment and to institute corrective measures on the School District's behalf had the required actual knowledge. *Gebser*, 524 U.S. at 290. The case at bar is similar to one in which university officials vested with authority to address a professor's alleged sexual harassment of a female student had no actual notice of any harassment until the student reported it during a meeting with the dean of her college, and thus university was not liable for any harassment that occurred prior to student's report. *Hayut v.*

*State University of New York*, 352 F.3d 733, 751 (2nd Cir. 2003). "Requiring actual, as opposed to constructive, knowledge imposes a greater evidentiary burden on a Title IX claimant." *Id.* at 750. Summary judgment is mandated on Plaintiff's Title IX claim because Espinosa cannot establish "actual knowledge" or "actual notice" of Brunt's alleged sexual harassment as required for liability to attach to the School District.

### (2) PLAINTIFF CANNOT ESTABLISH THAT THE SCHOOL DISTRICT RESPONDED WITH DELIBERATE INDIFFERENCE TO KNOWN ACTS OF STUDENT SEXUAL HARASSMENT BY DEFENDANT BRUNT

In addition to being entitled to summary judgment because Plaintiff cannot establish the requisite "actual notice" or "actual knowledge," the School District is entitled to summary judgment for a second independent reason. HCISD also is entitled to summary judgment because Plaintiff cannot establish that the School District responded with "deliberate indifference" to known acts of student sexual harassment by Brunt as is required for Title IX liability to attach. The courts "will not hold a school district liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference." *Gebser*, 524 U.S. at 292.

The *Gebser* Court described deliberate indifference as an "official decision by the recipient [of federal funds] not to remedy the violation." 524 U.S. at 290. For Plaintiff to prove her Title IX cause of action against HCISD, she is required to show "<u>intentional</u> sex discrimination in the form of the recipient's deliberate indifference to a teacher's sexual harassment of a student...." *Jackson v. Birmingham Bd of Educ.*, 544 U.S. __, 125 S. Ct. 1497 (2005), citing *Gebser*, 524 U.S. at 290-91 (emphasis added). The standards for establishing intentional deliberate indifference are high, and "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference...." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir.1998). Moreover, decisions reflecting deliberate indifference "are made with knowledge of the

objectionable conduct" and may <u>not</u> be based upon what school officials "should have known." *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 761 (5th Cir. 1993).

Cases illustrate when Title IX liability is precluded because deliberate indifference has <u>not</u> been found to exist. In one case, when the student eventually reported that the university employee had engaged in inappropriate sexual behavior toward her, the university promptly suspended the man pending an investigation of the charges, the man thus had no further involvement at school with the student, and he resigned from his employment without returning to his prior job. *Petrone v. Cleveland State Univ.*, 993 F.Supp. 1119, 1131 (N.D. Ohio 1998). The university's response thus had "negate[d] liability" under Title IX. *Id.* In a second case, the Title IX liability of a school district was precluded because the school principal responded to allegations that a teacher sexually molested a student by (1) interviewing the student and his mother, and (2) speaking with teacher and warning him either that he would be "dealt with" if the accusations were founded or that he should avoid acting in a way that could be misconstrued. *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 388 (5th Cir. 2000), *cert. denied*, 531 U.S. 1073 (2001). The principal's actions, though ineffective and erroneous in concluding that the allegations were not true, did not rise to the level of deliberate indifference. *Id.* In a third Title IX case, one involving allegations of student-on-student sexual harassment, upon learning of the plaintiff's allegations the school principal (1) interviewed the students involved, (2) interviewed employees, getting written statements from them; (3) held a meeting with the plaintiff-student and his parents, teachers, and administrators; and (4) transferred the accused student to another school to prevent any further harassment from occurring. *Wilson v. Beaumont Indep. Sch. Dist.*, 144 F.Supp.2d 690, 693-94 (E.D. Tex. 2001). Title IX liability was precluded under the deliberate indifference standard, because even assuming that the school district "could have taken swifter and more appropriate action, there is no legal requirement of perfection."

*Id*. at 694.

In the case at bar, Plaintiff does not even attempt to identify and has no evidence of any specific HCISD officials who allegedly had "knowledge of the objectionable conduct" and then responded with decisions or actions that were deliberately indifferent. *Gonzalez*, 996 F.2d at 761. To the contrary, the summary judgment evidence establishes that the School District and its officials and employees did not act with deliberate indifference. On February 20, 2001, the School District received its first notice of allegations of sexual misconduct by Defendant Brunt, and HCISD administrators met with Plaintiff's mother (D-X 1, ¶ 8; D-X 2.A, ¶s 1-3; D-X 3, Admission No. 10). That same day Assistant Principal Sosa, the Title IX investigator for Harlingen South, (1) initiated his Title IX investigation, (2) documented in writing the allegations raised by Plaintiff's mother and Plaintiff's therapist, and (3) informed the HCISD Human Resources Department of the allegations that had been raised against Brunt (D-X 2, ¶ 4; D-X 2.A; D-X 2.B, p. D-0037, ¶ 1).

The next day, *i.e.*, February 21, 2001, HCISD's Assistant Superintendent for Human Resources (1) met with Brunt and informed him that he was being placed on "administrative leave with pay pending an investigation of alleged inappropriate conduct toward a female student" (D-X 2.B, p. D-0039, ¶ 1; D-X 7, 26:5-25, 27:1-23), and (2) in a written memorandum, gave Brunt the directive that he was "to remain off duty, refrain from coming on school property, and have no further contact with Harlingen CISD personnel or students." (D-X 2.B, p. D-0039, ¶ 2). Moreover, Brunt was required to sign an acknowledgment that he had received the memorandum containing the directive (D-X 2.B, p. D-0039, ¶ 3). February 21, 2001, was Brunt's last day at the Harlingen South campus, and thereafter Plaintiff no longer had any contact with Brunt (D-X 3, Admission No. 29; D-X 7, 27:17-18). As she testified, "after it all came out into the open, I didn't even see him. I just -- I don't know what happened to him." (D-X 5, 147:21-23).

-24-

Mr. Sosa conducted a thorough investigation of Plaintiff's allegations of sexual harassment, and he spoke to the people whose names were brought to his attention during his interviews with Plaintiff and others, documented the interviews in writing, and obtained signed statements following the interviews from all who were available (D-X 2, ¶ 6; D-X 2.A, ¶s 1-5; D-X 2.B). During his investigation of Plaintiff's allegations, Mr. Sosa interviewed and obtained statements from (1) Plaintiff (D-X 2.B, pp. D-0040-44; D-X 5, 54:11-20, 55:2-9); (2) Defendant Brunt (D-X 2.B, pp. D-0055-60); (3) Plaintiff's mother (twice) (D-X 2.B, pp. D-0037-38, 0045-46); (4) Plaintiff's father (D-X 2.B, pp. D-0045-46) and (5) the student manager of the girl's soccer team, a Security Guard stationed at Harlingen South, and the other Athletic Trainer at Harlingen South (D-X 2.B, pp. D-0048-54). During the investigation, Mr. Sosa provided Plaintiff's parents with copies of HCISD Policies FNCJ (LEGAL) and FNCJ (LOCAL), entitled "Student Rights and Responsibilities: Sexual Harassment/Sexual Abuse," as well as a copy of FNCJ (EXHIBIT), "Notice of Parent and Student Rights" (D-X 1.A, 1.B, and 1.C; D-X 2.B, p. D-0047).

On March 1, 2001, Defendant Brunt resigned from his employment with the School District (D-X 1.J). Although Brunt already had resigned, Mr. Sosa completed his investigation, and on March 30, 2001, signed his Investigative Report concerning Plaintiff's allegations of sexual harassment by Brunt (D-X 2.B, pp. D-0035-36). By letter, also dated March 30, 2001, Mr. Sosa informed Plaintiff's parents that the investigation had been concluded and that "appropriate action" had been taken (D-X 2.B, p. D-0061, ¶s 3-4). Plaintiff's parents had been given copies in February 2001 of the HCISD policies entitled "Student Rights and Responsibilities: Sexual Harassment/Sexual Abuse," as well as a copy of the HCISD exhibit "Notice of Parent and Student Rights" (D-X 1.A, 1.B, and 1.C; D-X 2.B, p. D-0047). Although they thus were informed in February of their rights under HCISD policies if they were not satisfied with the outcome of the sexual harassment investigation, after Mr. Sosa

informed them of the conclusion of the investigation in March, they sought no further review pursuant to those policies (D-X 1, ¶ 10; D-X 2, ¶ 8).

In short, when provided notice of Plaintiff's allegations of sexual harassment by Brunt, HCISD did not turn a blind eye or ignore the allegations. Instead, it (1) suspended Brunt, (2) directed Brunt not to come onto school property or to have any contact with students or staff, (3) conducted a thorough investigation of Plaintiff's allegations, (4) provided Plaintiff's parents with copies of the school policies containing the procedures to follow if unsatisfied with the investigation, (5) accepted Brunt's resignation, and (6) informed Plaintiff's parents of the completion of the investigation. HCISD was not deliberately indifferent to Plaintiff's allegations. As a result, Title IX liability is precluded and the School District is entitled to summary judgment.

C.     **TO THE EXTENT THAT ESPINOSA ATTEMPTS TO RAISE THE PENDENT STATE COMMON LAW TORT OF ASSAULT AGAINST DEFENDANT BRUNT IN HIS OFFICIAL CAPACITY, THE SCHOOL DISTRICT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT IS IMMUNE FROM THE CAUSE OF ACTION**

Although the opening paragraph of Plaintiff's First Amended Complaint states that Espinosa only alleges a violation of Title IX, later in "Count II" of the Complaint she pleads the pendent state cause of action of "assault" against Defendant Brunt (Amended Pet. ¶ 13). While not using the language that Brunt is sued for assault in his "official capacity," Plaintiff nevertheless has sued Brunt for assault both "individually and as servant, agent and employee of HCISD" (Amended Pet. ¶ 13). To the extent that Plaintiff attempts to plead the common law tort of assault against Brunt in his official capacity, the School District is immune from the cause of action.

Any claim by Plaintiff against Defendant Brunt in his official capacity for assault is the equivalent of a claim against HCISD. As the U.S. Supreme Court has explained, "[o]fficial-capacity suits ... 'generally represent only another way of pleading an action against an entity of which the

officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165 (1985), quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978).  The same analysis is applied under Texas law, and "[s]uits against a government official in his official capacity are just another way of pleading a suit against a government entity of which the official is an agent." *City of Hempstead v. Kmeic*, 902 S.W.2d 118, 122 (Tex. App. — Houston [1st Dist.] 1995, no writ).  The School District and Defendant Brunt in his official capacity are entitled to summary judgment on the common law tort of assault based on their entitlement to governmental immunity pursuant to the Texas Tort Claims Act. TEX. CIV. PRAC. & REM. CODE §§ 101.001, *et seq.*

Under the Tort Claims Act, the school districts of the State are immune from liability for tort claims except for those arising out of the operation or use of a motor vehicle. TEX. CIV. PRAC. & REM. CODE §§ 101.021(1) and 101.051.  Pursuant to § 101.051, the governmental immunity of Texas school districts for common law torts is not waived "[e]xcept as to motor vehicles."  The Texas Supreme Court repeatedly has held that if a tort claim does not arise out of a school district's or its driver's operation or use of a motor vehicle, then "the school district is immune from liability...." *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 52 (Tex. 1992). *See also Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978) ("a school district's liability is limited to causes of action arising from the use of motor vehicles"); *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex. 1987) (pursuant to the Tort Claims Act, school districts are immune "from liability for damages caused by negligence except in circumstances relating to the use, maintenance or operation of motor vehicles").

The case at bar does not fall within the waiver of immunity provided by the Tort Claims Act and Plaintiff has never alleged or pleaded that her claims arise from Brunt's negligent operation or use of a motor vehicle.  Moreover, to the extent that Plaintiff pleads an intentional tort of assault, the

-27-

School District and Brunt in his official capacity also are immune under the Act for claims "arising out of assault, battery ... or any other intentional tort...." TEX. CIV. PRAC. & REM. CODE § 101.057(2). *See, e.g., Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)(state trooper's alleged assault of driver fit within the exception of § 101.057 preserving governmental immunity for claims arising out of assault, battery, or any other intentional tort). Plaintiff has no evidence to overcome the waiver of immunity provided by the Act. As a result, to the extent that Espinosa has raised the common law tort of assault against the School District and Defendant Brunt in his official capacity, they are entitled to governmental immunity pursuant to the Tort Claims Act. Liability is precluded on such a claim and the School District is entitled to summary judgment.

## VI.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant Harlingen Consolidated Independent School District respectfully requests that this Court grant its Motion for Summary Judgment and enter judgment in favor of HCISD that Plaintiff takes nothing by this suit. The School District further requests that all costs be taxed against Plaintiff. Finally, HCISD requests the Court grant such other and further relief, both general and specific, in law or at equity, as the Court deems just and proper.

Respectfully submitted,

WALSH, ANDERSON, BROWN
SCHULZE & ALDRIDGE, P.C.
P.O. Box 2156
Austin, Texas  78768
Telephone:  (512) 454-6864
Facsimile:  (512) 467-9318

By:_____
    BRIDGET ROBINSON
    State Bar No. 17086800
    Southern Dist. Admission No. 16521

ATTORNEYS FOR DEFENDANT HCISD

## CERTIFICATE OF SERVICE

       I hereby certify that on the 12th day of April 2005, a true and correct copy of the foregoing pleading was served upon counsel of record by placing same in the United States mail, certified, return receipt requested, postage prepaid and addressed as follows:

       Janice A. Cassidy
       P. O. Box 592
       San Benito, TX 78586

       Eileen Leeds
       Willette & Guerra, L.L.P.
       1534 East. 6th St., Suite 200
       Brownsville, Texas 78520

                                      _____
                                       BRIDGET ROBINSON

-29-