IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **CYNTHIA ESPINOSA,** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action B-04-052 | |
| § | | |
| § | | |
| **HARLINGEN CONSOLIDATED** § | | |
| **INDEPENDENT SCHOOL DISTRICT AND** § | | |
| **LARRY B. BRUNT** § | | |
| Defendants. § | | |

## OPINION AND ORDER

BE IT REMEMBERED that on June 20, 2005, the Court **GRANTED** Defendant's Motion for Summary Judgment [Dkt. No. 24].

### I. Introduction and Procedural Background

This case arises from the alleged sexual harassment of Cynthia Espinosa, a former student at Harlingen High School South, by the school's athletic trainer, Larry Brunt. Plaintiff originally filed this cause of action in the 103rd Judicial District Court of Cameron County, Texas, on August 21, 2003. After the filing of an amended petition in state court revealed a federal question, Defendant Harlingen Consolidated Independent School District [hereinafter "HCISD"] filed a timely notice of removal pursuant to 28 U.S.C. § 1446, asserting this Court has federal jurisdiction because Plaintiff's cause of action alleged a Title IX sexual harassment violation under 20 U.S.C. § 1681 *et seq. See also* 28 U.S.C. § 1331. Once removed, Plaintiff sought leave of Court to file her First Amended Complaint, which the Court granted. This complaint is the live pleading in this case. Having completed discovery, Defendant HCISD filed its Motion for Summary Judgment, to which Plaintiff has not responded.

## II. Undisputed Factual Background

Plaintiff was a student at Harlingen High School South, and a member of the girls soccer team from her freshman through her junior years of high school from 1998 through 2001. During practice, Plaintiff frequently suffered injuries that required her to seek the treatment of the school's athletic trainer,[1] Larry Brunt. Plaintiff first met Brunt in December 1999, during the preseason soccer term of her sophomore year. Brunt worked with Plaintiff to prevent and treat her soccer injuries during the soccer season of Plaintiff's sophomore year, December 1999 to April 2000, and during the first two months of Plaintiff's junior year soccer season, December 2000 to January 2001.

On or about February 5, 2001, Plaintiff informed her mother for the first time that during the 1999-2000 and 2000-2001 school years Brunt had sexually harassed her by: (1) kissing Plaintiff on her neck and lips while taking water bottles to a school storage shed, (2) repeatedly telling Plaintiff he loved her, (3) telling Plaintiff she needed to have an orgasm with him, (4) asking Plaintiff to go on a Carribean cruise with him, (5) telling Plaintiff she could live with him after she turned 18, (6) kissing Plaintiff on the cheek, (7) inviting Plaintiff to the locker room with him during a half-time break at a game, and (8) inviting Plaintiff to go bike riding with him on South Padre Island. *See* Def's Motion for Summary Judgment, Ex. 2.B, pp. D-0035, D-0037, ¶ 2, D-0040-44; Ex. 3 (Admission No. 2); Ex. 5, pp. 86, 87, 161-163 [Dkt. No. 24]. Prior to telling her mother about the sexual harassment, Plaintiff had not shared the information with anyone. *See id.* Ex. 5, pp. 86, 87. Defendant submits Plaintiff's interrogatory responses and deposition testimony in which Plaintiff acknowledges that either no one witnessed certain instances of sexual harassment or she does not know whether anyone witnessed the harassment. *See id.* Ex. 4 (Supp. Resp. to Interrog. #20); Ex. 5, pp. 59, 60, 61, 67, 68, 71.     Upon learning of her daughter's alleged sexual harassment, Plaintiff's mother told Plaintiff's therapist about the allegations. *See id.* Ex. 2.B, p. D-0037, ¶ 2, p. D-0038, ¶ 4; Ex. 3 (Admission Nos. 6 &

---

[1] Athletic trainers are licensed professionals under Texas law whose responsbilities include "the practice of preventing, recognizing, assessing, managing, treating, disposing of, and reconditioning athletic injuries . . . ." Tex. Occ. Code § 451.001(3).

26). Defendant submits evidence that HCISD first had notice of Plaintiff's allegations of sexual harassment on February 20, 2001, when Plaintiff's therapist reported the allegations to the school district, and Plaintiff's mother went to the high school where she reported the allegations to HCISD administrators. *See id.* Ex. 1, ¶ 8; Ex. 2, ¶ 4; Ex. 2.A, ¶¶ 1-3; Ex. 3 (Admission No. 10).[2]  There is no evidence before the Court indicating HCISD had notice of the allegations before February 20, 2001.  On February 20, 2001, Alfredo Sosa, the Assistant Principal and campus Title IX investigator at Harlingen High School South, met with Plaintiff's mother. *See id.* Ex. 2.A, ¶ 1.  Considering the allegations serious, Sosa began the investigatory process the same day Plaintiff's mother reported the allegations, and he informed Dr. Christina Garcia, HCISD's Assistant Superintendent for the Human Resources Department, of the allegations. *See id.* Ex. 2, ¶ 4; Ex. 2.A; Ex. 2.B, p. D-0037, ¶ 1.  After Plaintiff reported the allegations to HCISD on February 20, 2001, Plaintiff had no further contact with Brunt at school. *See id.* Ex. 3 (Admission No. 29); Ex. 5, pp. 147.

On February 21, 2001, Dr. Garcia met with Brunt, and informed him he was being placed on "administrative leave with pay pending an investigation of alleged inappropriate conduct toward a female student." *Id.* Ex. 2.B, p. D-0039, ¶ 1; Ex. 7, pp. 26-27.  Dr. Garcia instructed Brunt in a written memorandum that:

> [u]ntil further notice, you are to remain off duty, refrain from coming on school property, and have no further contact with Harlingen CISD personnel or students. You are not to go on school property or participate in any district activity, without specific permission from the Superintendent or this office.

---

[2] Prior to this complaint, HCISD had never received any reports of inappropriate touching or sexually harassing behavior by Brunt.  *See* Def's Motion for Summary Judgment, Ex. 1, ¶ 3 (affidavit of Superintendent of HCISD); Ex. 2, ¶ 3 (affidavit of Assistant Principal of Harlingen High School South).  At all times relevant to this case, HCISD had policies prohibiting employee-student sexual harassment, which included procedures for reporting and investigating any harassment.  *See id.* Ex. 1, ¶ 5.  Harlingen High School South provided students and parents with a student handbook, which defined and prohibited sexual harassment and explained the procedures to be followed for reporting harassment to HCISD.  *See id.* Ex. 1.G, pp. D-0201, D-218, D-0221, D-0233, D-0113, D-0128, D-0131, D-0145; *see also id.* Ex. 1.A, p. D-0001; Ex. 1.B, pp. D-0002-03; Ex. 1.C, pp. D-0004-05.  Plaintiff and her mother signed an acknowledgment indicating they had received the 2000-2001 student hand book.  *See id.* Ex. 1.H; Ex. 5, pp. 84-86.

*Id.* Ex. 2.B, p. D-0039, ¶ 2. Brunt signed an acknowledgment that he received the memorandum. *See id.* ¶ 3.

Defendant submits evidence explaining Sosa's investigation of Plaintiff's allegations, which spanned February 20, 2001, until March 30, 2001, and culminated in a completed Investigative Report with Sosa's signature attached. *See id.* Ex. 2, ¶ 6; Ex. 2.A, ¶¶ 1-5; Ex. 2.B, pp. D-0035-36; *see also* Def's Motion for Summary Judgment, at p. 10 (summarizing this evidence, and explaining how Sosa conducted his investigation). On March 1, 2001, approximately 29 days before Sosa's investigation was completed, Brunt resigned from his employment with HCISD. *See id.* Ex. 1.J.

Sosa's investigative report indicated his findings were "inconclusive" because Brunt "denied the truth of all allegations made against him by the complainant," and "there [were] no witnesses available or any other person who could verify that these allegations took place." *Id.* Ex. 2.B, p. D-0036, ¶¶ 2-3. Sosa informed Plaintiff's parents by letter dated March 30, 2001 that he had concluded the investigation and appropriate action had been taken. *See id.* Ex. 2.B, p. D-0061, ¶¶ 3-4 (also noting that confidentiality laws prohibited the disclosure of Sosa's specific findings). Plaintiff did not appeal or seek further administrative review of Sosa's findings pursuant to HCISD policies or procedures. *See id.* Ex. 1, ¶ 10; Ex. 2, ¶ 8. Instead, Plaintiff filed suit in state court on August 21, 2003.

### III.  Standard for Summary Judgment

Summary judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). *See also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a

genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[T]he burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," *Celotex Corp.*, 477 U.S. at 323, the party "need not negate the elements of the nonmovant's case." *Little*, 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 323).

If the moving party meets this burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little*, 37 F.3d at 1071 (citing *Celotex*, 477 U.S. at 325). "Unsubstantiated assertions" or "mere allegations or denials" will not adequately cast doubt on material facts at issue. *See id.* (citing *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *see also* Fed. R. Civ. P. 56(e). Likewise, the nonmovant must present more than a mere "scintilla" of evidence. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003); *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). Summary judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little*, 37 F.3d at 1071.

Plaintiff has not filed a response to Defendant's Motion for Summary Judgment. Local Rule 7.4 states that failure to respond to such a motion is interpreted as a representation of no opposition. Nevertheless, a Court cannot grant summary judgment simply because there has been no opposition to the motion. *Hibernia Nat'l Bank v. Admin. Cental Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (citation omitted). Stated differently, the Court may not issue a default summary judgment. The Court may, however, accept as undisputed the movant's version of the facts and grant summary judgment where the movant has met his initial burden of making a prima facie

showing of his entitlement to summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). If the movant fails to meet his initial burden, the nonmovant is not required to respond to the motion. *See John v. State of Louisiana (Board of Trustees for State Colleges and Universities)*, 757 F.2d 698, 708 (5th Cir. 1985). But, once a movant meets his initial burden, the nonmovant is not permitted to rest on the "mere allegations of his pleadings." *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988).

**IV.  Discussion**

Defendant argues it is entitled to summary judgment because Plaintiff cannot show a school representative with authority to stop Brunt's alleged sexual harassment had actual knowledge of the harassment, and failed to respond, or inadequately responded in deliberate indifference to the harassment. Additionally, Defendant argues Plaintiff cannot establish HCISD's liability for the state tort of assault because HCISD has immunity from intentional torts under the Texas Tort Claims Act.

**A.  Legal Standard - Title IX Cases**

Plaintiff alleges Defendant HCISD is liable under Title IX by virtue of its employment of Defendant Larry Brunt as the school's athletic trainer. Plaintiff neither cites 42 U.S.C. § 1983, nor asserts that she suffered injury as a result of HCISD's official policies or procedures.[3] Plaintiff's claim, therefore, clearly arises under Title IX of the Education Amendments of 1972, 20 U.S.C. § § 1681-1688, which prohibits discrimination on the basis of sex by educational organizations that receive federal funds. *See* 20 U.S.C. § 1681(a). Title IX provides in relevant part that "no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

---

[3] *See Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 220 n.8 (5th Cir. 1998) (explaining the difference between the standards for a Title IX claim against a school district and liability under section 1983). Unlike a Title IX claim, liability under section 1983 requires the plaintiff to demonstrate that "(1) the enforcement of a municipal policy or custom was (2) 'the moving force' of the violation of federally protected rights." *Id.* (quoting 1B Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and Defenses § 7.6 (3d ed. 1997) (quoting *City of Canton v. Harris*, 489 U.s. 378, 385-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989))).

under any education program or activity receiving Federal financial assistance . . . ." *Id.* Title IX is enforceable through a private right of action, *see Cannon v. Univ. of Chicago*, 441 U.S. 677, 709, 99 S.Ct. 1946, 1964, 60 L.Ed.2d 560 (1979), and money damages are available in such suits. *See Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 65-66, 112 S.Ct. 1028, 117 L.Ed. 208 (1992). The Supreme Court has recognized that teacher-student sexual harassment constitutes actionable discrimination under Title IX. *See id.* at 75.

HCISD may be liable for damages under Title IX for a teacher's sexual harassment of a student if one or more individuals vested with "authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge of [the] discrimination . . . and fail[ed] adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). "[M]oreover, . . . the response must amount to deliberate indifference to discrimination." *Id.* Deliberate indifference is a high standard to meet. *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (citations omitted). Officials who respond reasonably to a risk of harm, "even if the harm ultimately was not averted," are not considered to have been deliberately indifferent, and they will escape liability. *See id.* (quoting *farmer v. Brennan*, 511 U.S. 825, 844, 114 S.Ct. 1970, 1983, 128 L.Ed.2d 811 (1994)); *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S.Ct. 1661, 1671, 143 L.Ed.2d 839 (1999) (defining deliberate indifference in context of student-student harassment under Title IX as a "response to the harassment or lack thereof [that] is clearly unreasonable in light of the known circumstances."). Determining what constitutes appropriate responsive action to allegations of discrimination, including sexual harassment, under Title IX requires a fact-based inquiry. *See Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660-61 (5th Cir. 1997).

Thus, in order to avoid summary judgment, Plaintiff must present sufficient evidence to create a genuine issue of material fact that (1) a person with authority to address the alleged sexual harassment by Brunt and institute corrective measures on behalf of HCISD

(2) had actual notice of the discrimination, i.e. sexual harassment in this case, and (3) acted with deliberate indifference. As *Gebser* implicitly held, an adequate response by HCISD, by definition negates a claim of deliberate indifference to the sexual harassment.

### B.  Analysis of Title IX Claim

Defendant presents uncontroverted evidence demonstrating that it responded diligently, swiftly, and thoroughly to Plaintiff's allegations. As stated above, on February 20, 2001, Plaintiff and her therapist notified HCISD of the allegations, and Sosa began the investigatory process; on February 21, 2001, Dr. Garcia informed Brunt of his suspension and gave him further instructions to have no contact with HCISD or any students; on March 1, 2001, Brunt resigned; on March 30, 2001, Sosa concluded his investigation on behalf of HCISD, and notified Plaintiff that the investigation had concluded. There is no evidence in the record demonstrating HCISD had knowledge of the allegations prior to February 20, 2001. Moreover, it is undisputed that after Plaintiff notified HCISD of the allegations she had no further contact with Brunt. Finally, there is no evidence even suggesting HCISD had ever received complaints about Brunt prior to Plaintiff's allegations.

In light of Defendant's evidence, and Plaintiff's failure to present countervailing evidence, there is no genuine issue of fact concerning whether Defendant had actual knowledge of the sexual harassment. Moreover, the evidence demonstrates that HCISD's response to the allegations was entirely appropriate, reasonable, and adequate, thus negating any proof that Defendant acted with deliberate indifference to the allegations. *See Doe*, 220 F.3d at 388 (finding no deliberate indifference in teacher-student harassment case where school conducted proper investigation–even though the school reached an erroneous conclusion); *Hayut v. State University of New York*, 352 F.3d 733, 752 (2d Cir. 2003) (holding that where evidence did not show the defendant's response was untimely or otherwise inadequate, deliberate indifference was not exhibited). Thus, even if HCISD reached an incorrect conclusion concerning whether Brunt sexually harassed Plaintiff, this fact alone would not demonstrate deliberate indifference. *See Doe*, 220 F.3d at 388 (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ("We can foresee many good faith but ineffective responses that might satisfy a school

official's obligation in these situations, *e.g.*, warning the state actor, notifying the student's parents, or removing the student from the teacher's class." (other citations omitted))).

### C.  Analysis of State Assault Claim

Plaintiff alleges a state assault claim pursuant to sections 22.011 and 22.021 of the Texas Penal Code against "Brunt, individually and as servant, agent, and employee of HCISD." Pl's First Am. Cmplt. ¶ 13.  The Court agrees with Defendant HCISD that to the extent Plaintiff alleges this claim against Brunt in his official capacity as an employee of HCISD, this claim is really against the governmental entity.  *See City of Hampstead v. Kmeic*, 902 S.W.2d 118, 122 (Tex. App. –Houston [1st Dist.] 1995, no writ) (citations omitted).  The Texas Tort Claims Act, however, provides governmental immunity from liability, except to the extent it is statutorily waived in three general areas: use of publicly owned vehicles, premises defects, and injuries arising from the use or conditions of property.  *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994).  "[A] school district's liability is [generally] limited to causes of action arising from the use of motor vehicles."  *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex. 1987); *see also* Tex. Civ. Prac. & Rem. Code §§ 101.021(1), 101.051.  Moreover, immunity for the intentional tort of assault is not waived under the Texas Tort Claims Act.  *See* Tex. Civ. Prac. & Rem. Code § 101.057(2); *see also Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001) (holding state trooper's alleged assault of driver fell under § 101.057(2), which preserves governmental immunity for claims arising out of assault, battery, or any other intentional tort). Because Plaintiff has not brought suit within the waiver provisions of the Texas Tort Claims Act, HCISD and Brunt in his official capacity are immune from liability for the alleged intentional tort of assault by Brunt against Plaintiff. *See Kmeic*, 902 S.W.2d 118, 122

Finally, because Plaintiff has not responded to Defendant's Motion for Summary

Judgment, and Defendant Brunt did not individually move for summary judgment, it is unclear whether Plaintiff intends to pursue her assault claim against Brunt individually. If Plaintiff intends to pursue this state claim against Brunt individually, the Court **ORDERS** Plaintiff to notify the Court of such within 10 days of the issuance of this order. In notifying the Court, Plaintiff should also include argument concerning whether this Court should exercise its supplemental jurisdiction over this last remaining state claim when all federal claims have been dismissed. *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992); *Newport Ltd. v. Sears, Roebuck, and Co.*, 941 F.2d 302, 307-08 (5th Cir. 1991).

### V. Conclusion

In light of the evidence presented, the Court **GRANTS** Defendant's Motion for Summary Judgment [Dkt. No. 24].

DONE at Brownsville, Texas, this 20th day of June 2005.

Hilda G. Tagle
United States District Judge